FILED
2021 Jun-04  AM 10:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **ESTATE OF JAMES HATLEY,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No.: 4:20-cv-01334-ACA** |
| | ] | |
| **ETOWAH COUNTY, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION

Before the court is Defendant Etowah County's motion to dismiss (doc. 18) and Defendant Sheriff Jonathan Horton's motion to dismiss (doc. 20). The plaintiff is the Estate of James Hatley, who committed suicide while incarcerated in Etowah County Detention Center. Pursuant to 42 U.S.C. § 1983, the Estate asserts claims for deliberate indifference to serious medical needs and failure to protect from suicidal action in violation of the Eighth Amendment. (Doc. 16 at 9, 11). The Estate also asserts claims for wrongful death and negligent hiring, training, and supervision. (*Id.* at 18, 21).

Because Etowah County is not responsible for jail personnel, the court **WILL GRANT** Etowah County's motion to dismiss. Because Sheriff Horton is entitled to qualified immunity from the § 1983 claims and sovereign immunity from the tort claims, the court also **WILL GRANT** Sheriff Horton's motion to dismiss.

## I.    BACKGROUND

At this stage, the court must accept as true the factual allegations in the amended complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

Mr. Hatley was incarcerated in Etowah County Detention Center. (Doc. 16 at 6 ¶¶ 19–20). He suffered severe mental health issues at the jail and expressed intent to commit suicide. (*Id.* at 7, 13, 17 ¶¶ 24, 46, 57). He gave five handwritten notes to Defendant Deputy David Farley—who has not filed a motion to dismiss—and another deputy expressing concerns about his mental health and requesting medical treatment. (*Id.* at 7, 17–18 ¶¶ 24, 57). In the notes, Mr. Hatley wrote, "I need to talk to someone"; "I[']m having bad thoughts"; "I need to see doctor"; "needed something for pain"; "I[']m hurt"; "I can[']t go to . . . will hurt me"; and "kill himself." (*Id.* at 13, 17 ¶¶ 46, 57). He also wrote three times that his 20-year sentence ended on March 27, 2020, and he could therefore return home. (*Id.* at 17–18 ¶ 57). And he made verbal pleas for medical attention. (*Id.* at 9 ¶ 33). However, he did not receive any adequate medical treatment. (*Id.* at 6–7, 9–10 ¶¶ 22–25, 33, 36–37).

Mr. Hatley attempted suicide on March 28, 2020. (Doc. 16 at 7 ¶ 25). The attempt left visible damage on his face. (*Id.* at 14 ¶ 51). After the attempt, Defendant Doctors' Care Physicians, P.C., the medical provider at the jail, did not refer Mr.

Hatley for a psychiatric evaluation, transfer him to a psychiatric unit, provide appropriate medicine, or provide any other appropriate treatment. (*Id.* at 19–21 ¶¶ 62, 64, 66–67).

Mr. Hatley committed suicide on March 30, 2020, by hanging himself in his cell. (Doc. 16 at 6 ¶ 19). The Estate "believe[s] that [Mr.] Hatley had already reached his End of Sentence (E.O.S.) and thus should have been released by law" before the day he committed suicide. (*Id.* at 7–8 ¶ 26).

From these allegations, the Estate asserts two § 1983 claims against Sheriff Horton and Deputy Farley for violations of Mr. Hatley's Eighth Amendment rights. (Doc. 16 at 9, 11). One § 1983 claim alleges that those defendants were deliberately indifferent to Mr. Hatley's serious medical needs by denying him adequate medical care for his mental health and attempted suicide, and the other § 1983 claim alleges that those defendants were deliberately indifferent to Mr. Hatley's serious medical needs by failing to protect him from suicidal action. (*Id.*). The Estate also brings state law claims for wrongful death against Doctors' Care Physicians and negligent hiring, training, and supervision against Etowah County and Sheriff Horton. (*Id.* at 18, 21–22).

On April 7, 2021, the court ordered the Estate to show cause why the court should not grant Etowah County's motion to dismiss and to respond to Sheriff Horton's motion to dismiss. (Docs. 22, 23). On May 6, 2021, the Estate responded

to the court's order to show cause and both motions to dismiss.  (Doc. 26).  On May 13, 2021, Etowah County and Sheriff Horton filed a joint reply.  (Doc. 27).  The motions to dismiss are ripe for adjudication.

## II.    DISCUSSION

"To survive a [Rule 12(b)(6)] motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'"  *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  In deciding whether a plaintiff has stated a claim, the court follows a two-step approach, "first separating out the complaint's conclusory legal allegations and then determining whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'"  *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).

### 1.    Etowah County's Motion to Dismiss

Etowah County contends that the Estate has not pled a plausible claim for negligent hiring, training, and supervision because Etowah County is not responsible

for jail personnel.  (Doc. 19 at 7–11).  The court agrees.

Alabama counties are "creatures of the State who have only the powers granted to them by the State."  *McMillian v. Monroe Cnty.*, 520 U.S. 781, 790 (1997).  The Alabama Legislature has imposed some duties on counties with respect to jails, but those duties "are limited to funding the operation of the jail and to providing facilities to house the jail."  *Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1289 (11th Cir. 1998) (internal quotation marks omitted).  Alabama counties have no duties "relate[d] to the daily operation of the jails or to the supervision of inmates."  *Id.*  Instead, county sheriffs, not the counties themselves, have "control over the inmates of the jail, the employees of the jail, and the jail itself."  *Id.*  "The sheriff appoints, directs, and controls the deputies and jailers who work at the jail. . . .  The County has no authority to manage the sheriff's employees."  *Id.* (citation omitted).  Likewise, "a county commission does not have the authority, or the responsibility, to promulgate policies and work rules for employees of the sheriff's office, nor does a county commission have authority over law-enforcement policies or the training, supervision, hiring, or firing of the sheriff's employees."  *Ex parte Sumter Cnty.*, 953 So. 2d 1235, 1238 (Ala. 2006).

Pursuant to the well settled law discussed above, "[a county] cannot be held liable for any action resulting from the hiring, training, or supervising of jail

personnel." *Ex parte Sumter Cnty.*, 953 So. 2d at 1238.  Accordingly, the court **WILL GRANT** Etowah County's motion to dismiss.

    2.    <u>Sheriff Horton's Motion to Dismiss</u>

    *a.*    *Qualified Immunity*

Sheriff Horton contends that his qualified immunity bars the Estate's § 1983 claims against him.  (Doc. 21 at 6–12).  He is correct.

Government officials performing "discretionary functions" are entitled to qualified immunity from § 1983 claims "unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  A discretionary function is "a legitimate job-related function" performed "through means . . . within [the official's] power to utilize."  *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).  If the official establishes that he was performing a discretionary function, then, to overcome qualified immunity, the plaintiff must show: "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation."  *Id.* at 1264.  In ruling on qualified immunity, the court is permitted to decide which of these two prongs should be addressed first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Here, it is undisputed that Sheriff Horton was acting within the scope of his discretionary authority.  So the burden shifts to the Estate to allege that Sheriff Horton plausibly violated Mr. Hatley's clearly established constitutional rights. Critically, the Estate does not allege any facts showing Sheriff Horton's personal involvement in the events leading up to Mr. Hatley's suicide.  Instead, the Estate alleges that Mr. Hatley's written requests for medical attention "are imputed to [Sheriff] Horton . . . via *respondeat superior*."   (Doc. 16 at 7 ¶ 24).  Similarly, the Estate alleges that knowledge of Mr. Hatley's suicide attempt "is imputed to [Sheriff] Horton as the supervising agent of Deputy Farley."   (*Id.* at 14 ¶ 49). However, "[i]t is well established in [the Eleventh Circuit] that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks omitted).  So the Estate's *respondeat superior* argument fails.

The Estate also has not alleged facts showing Sheriff Horton's awareness of Mr. Hatley's circumstances.  The Estate alleges that it is "entitled to infer from the obviousness of the risk that Defendants knew of the risk.  Defendants Horton and Farley knew from the obviousness of suicide notes, medical requests and the attempted suicide of on or about March 28, 2020 that Hatley was in need of medical attention."  (Doc. 16 at 10 ¶ 36).  The Estate also contends that "knowledge is

imputed to [Sheriff] Horton" because "the suicide attempt was reported." (*Id.* at 14 ¶ 49). True, Mr. Hatley's serious medical needs were obvious from his several requests for medical attention and his suicide attempt. But the Estate has not alleged any facts showing that Sheriff Horton knew or should have known about Mr. Hatley's requests or suicide attempt. For example, the Estate does not allege that Deputy Farley told Sheriff Horton about Mr. Hatley's situation or that Sheriff Horton was ever present at the jail. Also, the Estate does not allege to whom the suicide attempt "was reported."

So, without any facts showing Sheriff Horton's personal involvement in or awareness of the events giving rise to this case, the Estate seeks to hold Sheriff Horton liable as a supervisor of jail personnel. "[T]o hold a supervisor liable [under § 1983,] a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." *Keith v. DeKalb Cnty.*, 749 F.3d 1034, 1047–48 (11th Cir. 2014). A causal connection exists "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so"; the supervisor's "custom or policy . . . result[s] in deliberate indifference to constitutional rights"; or when "facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from

doing so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).

The Estate has not alleged that Sheriff Horton directed subordinates to act unlawfully or knew that subordinates would act unlawfully and failed to stop them. Instead, the Estate relies on the "history of widespread abuse" and "custom or policy" theories of liability.  First, the Estate alleges that Sheriff Horton was responsible for a history and custom of denying inmates reasonable medical care that caused Mr. Hatley's death.  (Doc. 16 at 9–15; *see* Doc. 26-1 at 13–16).  But that bare allegation of a history or custom of denying inmates reasonable medical care is conclusory, and thus does not establish supervisor liability.  *See Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1267 (11th Cir. 2010) (finding that a conclusory assertion of a custom or policy resulting in deliberate indifference cannot establish supervisor liability).  Furthermore, one or two deputies' failure to respond to Mr. Hatley's requests for medical care and a single instance of substandard medical care after Mr. Hatley's suicide attempt does not constitute "obvious, flagrant, rampant and of continued duration . . . deprivations that constitute widespread abuse sufficient to notify" Sheriff Horton of constitutional violations.  *See Keith*, 749 F.3d at 1048.  Instead, those events are isolated incidents incapable of establishing supervisor liability.  *See id.* (finding that "isolated occurrences" of abuse do not constitute widespread abuse sufficient to establish supervisor liability).

Next, the Estate alleges that Sheriff Horton was responsible for a history and custom of inhumane living conditions at Etowah County Detention Center that caused Mr. Hatley's death.  (Doc. 16 at 7–8, 12–13, 15 ¶¶ 23, 29, 40, 45, 53; *see* Doc. 26-1 at 13–16).  However, the living condition allegations are conclusory.  At its most vague, the amended complaint simply alleges that "conditions" caused Mr. Hatley's suicide.  (Doc. 16 at 12–13 ¶¶ 40, 45).  In other places, the amended complaint references underfeeding, hazing, and unhygienic living conditions without supporting facts.  (*Id.* at 7–8 ¶¶ 23, 29).  Elsewhere, the amended complaint alleges "[i]t is believed" that officers hazed inmates—"likely" through sleep deprivation—and provided insufficient meals.  (*Id.* at 15 ¶ 53).  But these likelihoods, beliefs, and conclusions lacking specific factual allegations cannot defeat a motion to dismiss.

Even accepting the Estate's version of Mr. Hatley's living conditions, the Estate has not alleged facts establishing a history of widespread abuse or a custom or policy to hold Sheriff Horton liable for those conditions as a supervisor.  The Estate has not alleged a causal connection between the living conditions at Etowah County Detention Center and the constitutional violations alleged.  No factual allegations bridge the gap between poor living conditions and notice of a risk of suicide.

Accordingly, the Estate has failed to plausibly allege that Sheriff Horton violated Mr. Horton's constitutional rights, and the court will not address the clearly established prong of qualified immunity. Therefore, the court **WILL GRANT** Sheriff Horton's motion to dismiss as to the § 1983 claims against him on grounds of qualified immunity.

<i>b.   State Sovereign Immunity</i>

Finally, Sheriff Horton is immune from the Estate's claim for negligent hiring, training, and supervision pursuant to Article I, Section 14 of the Alabama Constitution. Section 14 provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. § 14. This sovereign immunity shields sheriffs in Alabama from tort claims when acting within the line and scope of their employment. *Ex parte Walker*, 97 So. 3d 747, 753 (Ala. 2012); *Ex parte Sumter Cnty.*, 953 So. 2d at 1239–40; *Ex parte Haralson*, 853 So. 2d 928, 932 (Ala. 2003); *Ex parte Purvis*, 689 So. 2d 794, 796 (Ala. 1996); *Parker v. Amerson*, 519 So. 2d 442, 445 (Ala. 1987). However, according to five exceptions to the rule, sheriffs do not have sovereign immunity from actions brought "(1) to compel him to perform his duties[;] (2) to compel him to perform ministerial acts[;] (3) to enjoin him from enforcing unconstitutional laws[;] (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law[;] or (5) to seek construction of a statute under the Declaratory Judgment Act."

11

*Ex parte Davis*, 930 So. 2d 497, 501 (Ala. 2005) (quoting *Alexander v. Hatfield*, 652 So. 2d 1142, 1143 (Ala.1994)).

Here, the Estate does not allege any facts showing Sheriff Horton ever acted outside the line and scope of his employment.  To the contrary, the Estate alleges that Sheriff Horton was negligent in the execution of his official duties.  Also, the Estate does not seek injunctive or declaratory relief (*see* doc. 16 at 23–24), so no exception to Sheriff Horton's sovereign immunity applies.  Therefore, the court **WILL GRANT** Sheriff Horton's motion to dismiss as to the tort claims against him on grounds of sovereign immunity.

## III.   CONCLUSION

For the reasons stated above, the court **WILL GRANT** Etowah County's and Sheriff Horton's motions to dismiss and **WILL DISMISS WITHOUT PREJUDICE** the Estate's claims against Etowah County and Sheriff Horton.  The claims against Deputy Farley and Doctors' Care Physicians will proceed.

The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this June 4, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE